**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRIS GRIFFIN, derivatively on behalf of GREAT LAKES DREDGE & DOCK CORPORATION, | : : : : | Civil Action No. |
| Plaintiff, | : : | |
| v. | : : | |
| JONATHAN W. BERGER, WILLIAM S. STECKEL, BRUCE BIEMECK, CARL A. ALBERT, NATHAN D. LEIGHT, DOUGLAS B. MACKIE, PETER R. DEUTSCH, JASON G. WEISS and STEPHEN H. BITTEL, | : : : : : : : : | |
| Defendants, | : : | **JURY TRIAL DEMANDED** |
| and | : : | |
| GREAT LAKES DREDGE & DOCK CORPORATION, | : : : | |
| Nominal Defendant. | : : | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

1.      Plaintiff Chris Griffin ("Plaintiff"), by and through his undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant  Great Lakes Dredge & Dock Corporation ("Great Lakes" or the "Company") against certain members of its Board of Directors (the "Board") and executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment from 2012 to the present (the "Relevant Period").

**NATURE OF THE ACTION**

2.      According to its public filings, Great Lakes is the largest provider of dredging services in the United States and the only U.S. dredging company with significant international operations.  The Company is also one of the largest U.S. providers of commercial and industrial

- 1 -

demolition and remediation services primarily in the Northeast and Midwest. The Company owns a 50% interest in a marine sand mining operation in New Jersey that supplies sand and aggregate for road and building construction and a 50% interest in an environmental service operation with the ability to remediate soil and dredged sediment treatment.

3.      On March 14, 2013, defendants announced that the Company would be restating its financial statements for the Second and Third Quarters of 2012 and that such financial statements should no longer be relied upon. Defendants further stated that they expected to conclude that a material weakness exists over the Company's financial reporting and that they would not be able to timely file Great Lakes' 2012 annual financial results with the U.S. Securities and Exchange Commission ("SEC").

4.      The basis for the Company's restatement and defendants' inability to timely file financial results was that the defendants had not recognized revenue in a manner consistent with the Company's accounting policy. Specifically, certain pending change orders where client acceptance was not finalized were improperly included as revenue. Defendants, therefore, were forced to admit that they had caused the Company to misstate its financial statements, and that certain revenues reported for the Second and Third Quarter of 2012 were overstated by $3.9 and $4.3 million respectively.

5.      On that same day, defendants further reported that due to their actions, the Company was not in compliance with a financial covenant to its senior revolving credit facility. As a result of the non-compliance, and in lieu of placing the Company in default, the Company would now be required to secure its credit obligations by having liens placed on certain of its vessels and all of its domestic accounts receivable.

6.      On this news, Great Lakes' common stock plummeted from a close of $8.97 per

share on March 14, 2013 to a close of $7.35 per share on March 15, 2013, a decline of 18%. The stock has not recovered to any appreciable extent.

7.      Throughout the Relevant Period, defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operation, and prospects.   Specifically, defendants made false and/or misleading statements and/or failed to disclose: (1) that defendants had caused the Company to improperly recognize revenue; (2) that defendants had caused the Company to default on one of its senior credit facility agreements, requiring the Company to secure such credit with its accounts receivable and liens on the Company's vessels; (3) that due to defendants' actions, the Company lacked adequate internal and financial controls; and (4) that, as a result of the foregoing, defendants caused the Company's financial results to be materially false and misleading at all relevant times.

8.      Accordingly, as a result of defendants' breaches, the Company has been damaged. Further, it is clear that certain defendants have received excessive compensation for the year 2012, due to the fact that the compensation was based (at least in part) on false financial results.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that Plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the

wrongful acts detailed herein, occurred in this district. One or more of the defendants either

resides in or maintains executive offices in this district, and defendants have received substantial

compensation in this district by engaging in numerous activities and conducting business here,

which had an effect in this district.

## THE PARTIES

11.     Plaintiff is a current shareholder of Great Lakes and has continuously held Great

Lakes stock since June 2007. Plaintiff is a citizen of Nevada.

12.     Nominal defendant Great Lakes is a Delaware corporation, with its principal

executive offices at 2122 York Road, Oak Brook, Illinois 60523. According to its public filings,

Great Lakes is the largest provider of dredging services in the United States and the only U.S.

dredging company with significant international operations. The Company is also one of the

largest U.S. providers of commercial and industrial demolition and remediation services

primarily in the Northeast and Midwest. The Company owns a 50% interest in a marine sand

mining operation in New Jersey that supplies sand and aggregate for road and building

construction and a 50% interest in an environmental service operation with the ability to

remediate soil and dredged sediment treatment.

13.     Defendant Jonathan W. Berger ("Berger") has served as the Company's Chief

Executive Officer ("CEO") since September 2010 and as a director since December 2006. Upon

information and belief, defendant Berger is a citizen of Illinois.

14.     Defendant William S. Steckel ("Steckel") has served as the Company's Senior

Vice President and Chief Financial Officer ("CFO") since August 2012. Upon information and

belief, defendant Steckel is a citizen of Illinois.

15.     Defendant Bruce Biemeck ("Biemeck") served as President and Chief Operating

Officer ("COO") at Great Lakes from August 2012 until his "resignation" effective March 13, 2013. From September 2010 to August 2012, Biemeck served as the Company's CFO. Upon information and belief, defendant Biemeck is a citizen of Illinois.

16.     Defendant Carl A. Albert ("Albert") has served as a director of the Company since July 2010. In addition, defendant Albert served as Chair of the Company's Audit Committee (the "Audit Committee") during the Relevant Period. Upon information and belief, defendant Albert is a citizen of California.

17.     Defendant Nathan D. Leight ("Leight") has served as Chairman of the Board since March 2011 and has served as a director of the Company since 2006. In addition, defendant Leight served as a member of the Audit Committee during the Relevant Period. Upon information and belief, defendant Leight is a citizen of Florida.

18.     Defendant Douglas B. Mackie ("Mackie") has served as a director of the Company since 1995. Previously, defendant Mackie served as the Company's President and CEO from 1995 until September 2010. Upon information and belief, defendant Mackie is a citizen of Florida.

19.     Defendant Peter R. Deutsch ("Deutsch") has served as a director of the Company since 2006. In addition, defendant Deutsch served as a member of the Audit Committee during the Relevant Period. Upon information and belief, defendant Deutsch is a citizen of Florida.

20.     Defendant Jason G. Weiss ("Weiss") has served as a director of the Company since 2006. Upon information and belief, defendant Weiss is a citizen of California.

21.     Defendant Stephen H. Bittel ("Bittel") has served as a director of the Company since 2011. In addition, defendant Bittel served as a member of the Audit Committee during the Relevant Period. Upon information and belief, defendant Bittel is a citizen of Florida.

22.     Collectively, defendants Berger, Steckel, Biemeck, Albert Leight, Mackie, Deutsch, Weiss and Bittel shall be referred to herein as "Defendants."

23.     Collectively, defendants Albert, Leight, Deutsch and Bittel shall be referred to as the "Audit Committee Defendants."

## DEFENDANTS' DUTIES

24.     By reason of their positions as officers, directors, and/or fiduciaries of Great Lakes and because of their ability to control the business and corporate affairs of Great Lakes, Defendants owed Great Lakes and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Great Lakes in a fair, just, honest, and equitable manner.  Defendants were and are required to act in furtherance of the best interests of Great Lakes and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to Great Lakes and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

25.     Defendants, because of their positions of control and authority as directors and/or officers of Great Lakes, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Great Lakes, each of the Defendants had knowledge of material non-public information regarding the Company.

26.     To discharge their duties, the officers and directors of Great Lakes were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of Great Lakes

were required to, among other things:

  a. Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

  b. Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

  c. When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

27.     Upon information and belief, none of the Audit Committee defendants is an accountant. Nonetheless, pursuant to the Audit Committee's Charter, the members of the Audit Committee are required, *inter alia*, to:

  a. Review with the management the quality and adequacy of internal controls that could significantly affect the Company's financial statements, and review any special audit steps adopted in light of material control deficiencies;

  b. Review with the Board any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, or the performance of the internal audit function;

  c. Review management's monitoring of the Company's compliance with laws and the Company's Code of Business Conduct and Ethics;

  d. Discuss with management the quality and adequacy of the Company's disclosure controls and procedures;

  e. Meet to review and discuss with management the Company's quarterly and annual financial statements.

## SUBSTANTIVE ALLEGATIONS

### A.     Company Background

28.     According to its public filings, the Company is the largest provider of dredging services in the United States and the only U.S. dredging company with significant international

operations. The Company is also one of the largest U.S. providers of commercial and industrial demolition and remediation services primarily in the Northeast and Midwest. The Company owns a 50% interest in a marine sand mining operation in New Jersey that supplies sand and aggregate for road and building construction and a 50% interest in an environmental service operation with the ability to remediate soil and dredged sediment treatment.

**B.    Defendants' False and Misleading Statements**

29.    On August 7, 2012, Defendants issued a press release entitled "Great Lakes Reports Second Quarter 2012 Results." The press release reported, among other things, quarterly revenue of $166.5 million and quarterly net income of $4.4 million. In addition, the press release set forth, in relevant part:

> Chief Executive Officer Jonathan Berger said, "The dredging division performed well this quarter, after weather impacted results in the first quarter of 2012. Backlog remained at a high level, $455 million, at June 30, 2012, despite the slow domestic bidding during the second quarter. The demolition segment continues to perform on its projects in backlog. A large portion of the demolition backlog earned in the quarter relates to new management's focus on large complex projects with higher margins, such as bridge demolition and industrial, municipal and utility buildings.
>
> Mr. Berger added, "Adjusted EBITDA of $35.6 million for the first six months was in line with our internal expectations. With our current backlog and the projection of additional projects that we will win and perform this year, we feel we are well positioned to meet our Adjusted EBITDA guidance for 2012."
>
> Mr. Berger continued, "The last month has been very busy for us. Positive legislation was passed by Congress and signed into law by the President, bidding has been active in dredging and demolition and we announced we are building a new, world class hopper dredge. Great Lakes is well positioned to execute on our strategic plan of doubling the size of the Company in five years."

30.    Also on August 7, 2012, Defendants caused the Company to file with the SEC its quarterly report on Form 10-Q. The Form 10-Q reiterated the Company's financial results set forth in the press release issued that same day.

31.     In addition, pursuant to the Sarbanes-Oxley Act of 2002, the Form 10-Q contained signed certifications ("SOX Certifications") by defendants Berger and Biemeck, stating that the financial information contained in the Form 10-Q was accurate, and that any material changes to the Company's internal control over financial reporting were disclosed.  The SOX Certifications set forth:

I, [Jonathan W. Berger/Bruce J. Biemeck], certify that:

1.      I have reviewed this quarterly report on Form 10-Q of Great Lakes Dredge & Dock Corporation;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such an evaluation; and

(d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to

materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

    (a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    (b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

      *     *     *

In connection with the Quarterly Report of Great Lakes Dredge & Dock Corporation (the "Company") on Form 10-Q for the period ended June 30, 2012, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, [Jonathan W. Berger, Chief Executive Officer of the Registrant/Bruce J. Biemeck, President and Chief Financial Officer], certify pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:

(1)    The Report fully complies with the requirements of Section 13(a) or Section 15(d) of the Securities Exchange Act of 1934, as amended; and

(2)    The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

This certification accompanies the Report pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 and shall not, except to the extent required by the Sarbanes-Oxley Act of 2002, be deemed filed by Great Lakes Dredge & Dock Corporation for purposes of Section 18 of the Securities Exchange Act of 1934, as amended.

32.    On August 17, 2012, Defendants announced that defendant Steckel had been appointed Senior Vice President and CFO effective August 20, 2012.

33.    On November 6, 2012, Defendants issued a press release entitled "Great Lakes Reports Third Quarter 2012 Results." The press release reported quarterly revenue of $166.8 million and a quarterly net loss of $2.1 million. In addition, the press release set forth, in relevant part:

Chief Executive Officer Jonathan Berger said, "Our third quarter results were hampered by certain factors we will outline. We entered the fourth quarter with scheduled revenues and margin to achieve our previously stated annual goals.

Since then the epic Hurricane Sandy has had a significant impact on our expected results for the fourth quarter as we will have lost a total of 25 working days over seven projects because we were forced to move our dredges and support equipment to protected waters. Our operations team and crews did a wonderful job of executing our emergency plans safely and efficiently. We were able to ride out Sandy with minimal damage to our operating equipment and have gotten the projects back up and running quickly. We currently estimate approximately $6 million of revenue and $3 million of gross margin has been pushed into next year, and we will incur $3 million of additional one time expenditures in the fourth quarter due to the storm. We have therefore modified our projected full-year adjusted EBITDA range to $85 to $90 million.

"Hurricane Sandy has significantly affected coastal communities along the East Coast. As a Company, Great Lakes' thoughts and prayers go out to each and every one of the individuals and families impacted. The dredging industry has performed beach nourishment and shore protection in these markets for decades. We have received positive reports that the Nags Head Beach in North Carolina weathered the storm well as a result of a large beach nourishment project we completed last year. We believe Hurricanes Sandy, Debby, and Isaac should result in increasing focus and demand for supplemental Federal funding critical for coastal restoration and beach projects in the Gulf of Mexico and on the East Coast.

"Our third quarter was challenging as our dredging segment utilization was impacted by Hurricane Isaac, which not only delayed four large dredging projects, but added costs and lowered expected margins on these projects. We were further impacted by projects that were bid later than expected, therefore the notice to proceed was received and work started late in third quarter and early into the fourth. Also, $30 million in options on the projects in the third quarter were not awarded until the fourth quarter. This shift in revenue to the fourth quarter resulted in lower fixed cost coverage and compressed gross margin in the third quarter. Although late bid award timing caused us a short term challenge in the third quarter, the pickup in the domestic bid market late in the quarter positions us well for a strong fourth quarter and beyond. Approximately $134 million in projects were awarded to the Company during the third quarter of 2012. These awards, along with the award of a $47 million project in the Middle East, helped drive total backlog up to $506 million.

"After several strong quarters, the demolition segment's results were negatively impacted by cost overruns caused by weather and scope changes outside those allowed to be reimbursed under the contract. These impacts lowered the demolition gross margin by over 9% and were limited to the third quarter. On a positive note, the demolition segment was awarded a $3 million power plant project in North Carolina prior to quarter end and another $12 million industrial demolition project in Ohio in October. Management continues to focus on large

complex projects with higher margins, such as bridge, industrial, municipal and utility demolition and remediation."

Mr. William Steckel, Senior Vice President and Chief Financial Officer added, "Our management team is focused on delivering strong results in the upcoming fourth quarter. The third quarter reflects the negative impact of the shift of project execution into the fourth quarter. We have prepared our equipment and personnel for the project workload planned in the upcoming quarter. As planned, we have experienced a significant increase in our working capital, and corresponding decrease in our cash this year. Two projects with the most significant investment are Wheatstone and the Scofield coastal restoration. Collectively we have invested nearly $40 million in these important projects that we expect to be monetized in 2013. We have a strong focus going forward on working capital management and generating positive cash flow."

34.     On November 7, 2012, Defendants caused the Company to file its quarterly report with the SEC on Form 10-Q. The Form 10-Q reiterated the Company's financial results set forth in the press release issued that same day. The Form 10-Q also contained SOX Certifications, signed by defendants Berger and Steckel, which were substantially similar to those set forth above.

35.     Throughout the Relevant Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operation, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that Defendants had caused the Company to improperly recognize revenue; (2) that Defendants had caused the Company to default on one of its senior credit facility agreements, requiring the Company to secure such credit with its accounts receivable and liens on the Company's vessels; (3) that due to Defendants' actions, the Company lacked adequate internal and financial controls; and (4) that, as a result of the foregoing, Defendants caused the Company's financial results to be materially false and misleading at all relevant times.

C.     **The Truth Begins To Emerge**

36.     On March 14, 2013, Defendants issued a press release entitled "Great Lakes

Reports Year-End Results." The press release revealed, in relevant part:

> Great Lakes Dredge & Dock Corporation (NASDAQ:GLDD), the largest provider
> of dredging services in the United States and a major provider of commercial and
> industrial demolition and remediation services, today reported financial results for
> the quarter and year ended December 31, 2012.
>
> For the three months ended December 31, 2012, Great Lakes reported Revenue of
> $207.1 million, Net Income attributable to Great Lakes of $0.3 million and
> Adjusted EBITDA of $21.3 million. For the year ended December 31, 2012,
> Great Lakes reported Revenue of $687.6 million, Net Loss attributable to Great
> Lakes of $2.7 million and Adjusted EBITDA of $60.9 million.
>
> The Company will amend its September 30, 2012 and June 30, 2012 Quarterly
> Reports on Form 10-Q which will delay its filing of the 2012 Form 10-K. The
> Company expects to file its 2012 Form 10-K and amendments to its September
> 30, 2012 and June 30, 2012 Quarterly Reports on Form 10-Q by March 29, 2013.
> The Company will also identify and disclose a material weakness in internal
> control over financial reporting.
>
> ***Restatement of Second and Third Quarters***
>
> During the preparation of its year-end financial statements, the Company
> identified instances in its demolition segment where revenue was recognized in a
> manner not consistent with Great Lakes' accounting policy. Great Lakes' policy
> regarding pending change orders is to immediately recognize the costs but defer
> the recognition of the related revenue until the recovery is probable and
> collectability is reasonably assured. Certain pending change orders where client
> acceptance has not been finalized were included as revenue. ***After a review, the
> Company concluded 2012 second and third quarter demolition segment
> revenues were overstated by $3.9 million and $4.3 million, respectively. The
> Company believes recognition of a significant portion of these amounts is a
> timing issue. However, the Company cannot provide assurance the revenue
> from these pending change orders is certain to be realized.***
>
> ***Restatements of the financial statements to be included in the amended
> Quarterly Reports on Form 10-Q for the second and third quarters of 2012 will
> also include adjustments to dredging operating income to record $1.3 million
> and $0.9 million, respectively, of expenses previously capitalized and incurred
> in the preparation of vessels for the Wheatstone Australia LNG project.*** These
> expenses were incurred as a strategic decision to minimize downtime and

positively impact the project gross margin while we work in a remote area of Australia in 2013 and 2014.

### Fourth Quarter

For the fourth quarter, $5.6 million of demolition revenue originally expected to be realized did not meet the Company's revenue recognition standards. The Company also believes recognition of a significant portion of these amounts is a timing issue. However, the Company cannot provide assurance the revenue from these pending change orders is certain to be realized.

### Executive Departure

The Company also announced the departure of Bruce J. Biemeck, President and Chief Operating Officer effective March 13, 2013 with recognition of his years of service as an officer and member of the Board of Directors. Mr. Biemeck served as Chief Financial Officer until August 20, 2012.

Please refer to the Form 12b-25 and Form 8-K which will be filed with the SEC later today for additional information.

### Commentary

***Jonathan Berger, Chief Executive Officer, said "I am deeply disappointed with the issues in our demolition segment, which contributed to the need to restate our second and third quarter financial results, and deferral of the recognition of revenue and Adjusted EBITDA. We will be focusing on improving controls at our demolition segment and throughout the Company. We at Great Lakes are committed to growing our business and increasing shareholder value.*** The demolition segment is a key part of our growth strategy, and we are committed to having the right personnel and tools in place to effectively grow the segment while maintaining adequate operational and financial controls.

"On December 31, 2012 we purchased the assets of Terra Contracting, a respected provider of a wide variety of essential services for environmental, maintenance and infrastructure-related applications. With Terra's environmental expertise we expect to broaden the service offerings of our demolition and environmental businesses and expand their market reach."

William Steckel, Chief Financial Officer said "The dredging segment had a strong quarter, with record revenue of $190.1 million. The dredging segment safely and efficiently executed over 18 domestic projects in the quarter. Although our results in dredging were outstanding, we fell short of our high expectations for the fourth quarter. This was in part because three dredging projects shifted from the fourth quarter into the first quarter of 2013 and there were cost overruns in two other projects. The dredging segment had also expected to sell an underutilized dredge

prior to year end. The buyer experienced funding delays and we now expect to realize the $4.0 million gain on the sale of this dredge in 2013.

"We maintained our strategic investment in working capital for key projects and balanced these investments with our overall objective of maximizing shareholder value, with the decrease in cash in the quarter resulting primarily from our $15 million special dividend. As previously disclosed, we have committed substantial working capital to large projects this year with the most significant investments being Wheatstone and the Scofield island coastal restoration project in Louisiana. Across these two projects, we have invested nearly $60 million. We expect to recapture this working capital throughout 2013. We have a strong focus going forward on working capital management and generating positive cash flow.

"During 2012 we incurred $4.7 million of accelerated maintenance expenses related to preparation of vessels for the Wheatstone project in Australia, which we expected to recognize in future periods based on project performance. In our amended June 30, 2012 and September 30, 2012 Form 10-Qs we will adjust dredging operating income to record $1.3 million and $0.9 million, respectively, of these expenses as a period cost. The remaining $2.5 million was expensed in the fourth quarter. The Company does not frequently incur significant accelerated maintenance as a part of its international deployments. We have therefore excluded these accelerated maintenance expenses from the calculation of Adjusted EBITDA that we are including in this earnings release. Exclusion of these expenses from the calculation of Adjusted EBITDA allows users of the financial statements to more easily compare our year-to-year results.

"As a result of the matters described in this release, we did not meet one of our financial covenants in our senior revolving credit facility ("Credit Agreement") and our International Letter of Credit Facility at December 31, 2012. Both the Credit Agreement and the International Letter of Credit Facility require us to maintain a minimum fixed charge coverage ratio of 1.25 to 1.0. Our fixed charge coverage ratio as of December 31, 2012 was 1.12x, resulting in a default under the Credit Agreement and International Letter of Credit Facility, and a potential default due to a change of condition under our bonding agreement. While there can be no guarantees, we expect to receive all necessary waivers from our banks and our surety prior to filing our Form 10-K and we anticipate being in full compliance will all financial covenants in the first quarter of 2013." [Emphasis added.]

37.    Also on March 14, 2013, Defendants caused the Company to file with the SEC a

Notification of Late Filing on Form 12b-25.  The Form 12b-25 set forth, in relevant part:

***Great Lakes Dredge & Dock Corporation (the "Company") is unable to timely file its Annual Report on Form 10-K for the year ended December 31, 2012 (the***

*"Form 10-K") without unreasonable effort or expense due to the circumstances described below.*

*During the preparation of its year-end financial statements, the Company identified instances in its demolition segment where revenue was recognized in a manner not consistent with the Company's accounting policy. The Company's policy regarding pending change orders is to immediately recognize the costs but defer the recognition of the related revenue until the recovery is probable and collectability is reasonably assured. Certain pending change orders where client acceptance has not been finalized were included as revenue. After a review, the Company concluded 2012 second and third quarter demolition segment revenues were overstated by $3.9 million and $4.3 million, respectively. Due to the time expended on this review, the Company now requires additional time to finalize the presentation and review of its financial statements and will be unable to meet the filing deadline for its Annual Report on Form 10-K.*

*The Company has determined that there was a failure of internal controls to detect or prevent misstatements in the financial statements and that such misstatements are material to the Company's results of operations for the quarterly and year-to-date periods ended June 30, 2012 and September 30, 2012,* but not to any prior interim or annual period. Therefore, the Company will restate its condensed consolidated interim financial statements via the filing of amended Quarterly Reports on Form 10-Q for the periods ended June 30, 2012 and September 30, 2012 prior to filing its annual audited financial statements with the Form 10-K. *These amended Quarterly Reports will reflect the conclusion regarding 2012 second and third quarter demolition segment revenues described above and will also include adjustments to dredging operating income to record $1.3 million and $0.9 million of expenses previously capitalized and incurred in the preparation of vessels for the Wheatstone Australia LNG project.*

Management's review and assessment of the Company's disclosure controls and procedures and management's evaluation of the Company's internal control over financial reporting, which is ongoing, has identified a material weakness. A "material weakness" is a deficiency, or a combination of significant deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.

Management is in the process of completing the year-end and restated interim financial statements and assessing matters relating to the effectiveness of the Company's internal control over financial reporting. Management is also in the process of determining the steps necessary to remediate any material weakness, and recommending to the Audit Committee of the Company's Board of Directors the corrective actions that the Company could take in connection with the remediation efforts.

Management is working to complete the additional procedures necessary to file the Form 10-K as soon as practicable, but no later than Friday, March 29, 2013. [Emphasis added.]

38. On this news, Great Lakes' common stock plummeted from a close of $8.97 per share on March 14, 2013 to a close of $7.35 per share on March 15, 2013, a decline of 18%.

39. On March 19, 2013, Defendants filed with the SEC a Form 8-K which revealed that the Company was not in compliance with one of its financial covenants under its senior revolving credit facility, dated as of June 4, 2012. Defendants further stated that the Company was in default under its credit agreement and the international letter of credit facility, and that the outstanding obligations under the credit agreement would now be secured by liens on certain of the Company's vessels and all of the Company's domestic accounts receivable.

40. On March 29, 2013, Defendants caused the Company to file its Amended Quarterly Reports on Forms 10-Q/A.

41. Accordingly, as a result of Defendants' breaches, the Company has been damaged. Further, it is clear that certain of the Defendants have received excessive compensation for 2012, due to the fact that the compensation was based (at least in part) on false financial results.

## DERIVATIVE AND DEMAND ALLEGATIONS

42. Plaintiff brings this action derivatively in the right and for the benefit of Great Lakes to redress the breaches of fiduciary duty and other violations of law by Defendants.

43. Plaintiff will adequately and fairly represent the interests of Great Lakes and its shareholders in enforcing and prosecuting its rights.

44. The Board currently consists of the following seven (7) directors: defendants Berger, Albert, Leight, Mackie, Deutsch, Weiss and Bittel. Plaintiff has not made any demand

on the present Board to institute this action because such a demand would be a futile, wasteful

and useless act, for the following reasons:

a. During the Relevant Period, defendants Albert, Leight, Deutsch and Bittel (a majority of the Board) served as members of the Audit Committee. Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee were and are responsible for, *inter alia*, reviewing the Company's annual and quarterly financial reports and reviewing the integrity of the Company's internal controls. Defendants Albert, Leight, Deutsch and Bittel breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted the Company to disseminate false and misleading statements in the Company's SEC filings and other disclosures and caused the above-discussed internal control failures. Therefore, defendants Albert, Leight, Deutsch and Bittel each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile;

b. The principal professional occupation of defendant Berger is his employment with Great Lakes as CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits. In addition, according to the Company's Proxy Statement filed with the SEC on Form DEF 14A on April 11, 2013 (the "2013 Proxy"), Defendants have admitted that defendant Berger is not independent. Thus, defendant Berger lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action;

c. The principal professional occupation of defendant Mackie between 1995 and September 2010 was his employment with Great Lakes as its President and CEO, pursuant to which he received substantial monetary compensation and other benefits. Further, defendant Mackie's daughter, Kathleen Lavoy, serves as Great Lakes' secretary, Chief Legal Officer and Chief Compliance Officer. In addition, according to the 2013 Proxy, Defendant Mackie is not independent. As such, defendant Mackie has a close familial relationship with one of the Company's top officers. Thus, defendant Mackie lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action;

d. Defendants Berger and Leight lack independence from each other due to the fact that they are cousins. As a result of this close family relationship, defendants Berger and Leight are unable to independently consider a demand to commence and vigorously prosecute this action against each other.

    e.   Defendants Leight, Albert, Berger , Deutsch and Weiss lack independence from each other due to the fact that these defendants all served as members of the Board of Directors of Aldabra Acquisition Corporation ("Aldabra") alongside each other. Due to this longstanding intertwined professional relationship, defendants Leight, Albert, Berger, Deutsche and Weiss lack independence from each other, and are unable to independently consider a demand to commence and vigorously prosecute this action against each other; and

    f.   Defendants Albert, Leight, Weiss and Berger lack independence from each other due to the fact that these defendants all served as members of the Board of Directors of Bose, Inc. ("Bose"). Due to this longstanding intertwined professional relationship, defendants Leight, Albert, Weiss and Berger lack independence from each other, and are unable to independently consider a demand to commence and vigorously prosecute this action against each other.

## COUNT I
### AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION

45.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

46.    As alleged in detail herein, each of the Defendants (and particularly the Audit Committee Defendants) had a duty to ensure that Great Lakes disseminated accurate, truthful and complete information to its shareholders.

47.    Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to Great Lakes shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings and other public statements and disclosures as detailed herein. These actions could not have been a good faith exercise of prudent business judgment.

48.    As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II
## AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES
## FOR FAILING TO MAINTAIN INTERNAL CONTROLS

49.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

50.     As alleged herein, each of the Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

51.     Defendants willfully ignored the obvious and pervasive problems with Great Lakes' internal controls practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

52.     As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

## COUNT III
## AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR
## FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY

53.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

54.     Defendants owed and owe Great Lakes fiduciary obligations.  By reason of their fiduciary relationships, Defendants specifically owed and owe Great Lakes the highest obligation of good faith, fair dealing, loyalty and due care.

55.     Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

56.     As a direct and proximate result of Defendants' failure to perform their fiduciary

obligations, Great Lakes has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

57.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

58.     Plaintiff, on behalf of Great Lakes, has no adequate remedy at law.

## COUNT IV
## AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

59.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

60.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Great Lakes.

61.     Plaintiff, as a shareholder and representative of Great Lakes, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT V
## AGAINST ALL DEFENDANTS FOR ABUSE OF CONTROL

62.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

63.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Great Lakes, for which they are legally responsible.   In particular, Defendants abused their positions of authority by causing or allowing Great Lakes to misrepresent material facts regarding its financial position and business prospects.

64.     As a direct and proximate result of Defendants' abuse of control, Great Lakes has sustained significant damages.

65.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

66.     Plaintiff, on behalf of Great Lakes, has no adequate remedy at law.

**COUNT VI**
**AGAINST ALL DEFENDANTS FOR GROSS MISMANAGEMENT**

67.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

68.     Defendants had a duty to Great Lakes and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Great Lakes.

69.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Great Lakes in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Great Lakes' affairs and in the use and preservation of Great Lakes' assets.

70.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Great Lakes to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Great Lakes, thus breaching their duties to the Company.  As a result, Defendants grossly mismanaged Great Lakes.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.    Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.    Directing Great Lakes to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board

C.    Awarding to Great Lakes restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 9, 2013

/s/ Matthew T. Hurst

Matthew T. Hurst
**SUSMAN HEFFNER & HURST LLP**
30 North LaSalle Street, 12th Floor
Chicago, Illinois 60603
Phone: (312) 346-3466
Facsimile: (312) 346-2829
Email: mhurst@shhllp.com

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
Brett D. Stecker
Jeffrey J. Ciarlanto
Christopher L. Nelson
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062


Counsel for Plaintiff

## GREAT LAKES DREDGE & DOCK CORPORATION VERIFICATION

I, Chris Griffin, hereby verify that I am familiar with the allegations in the Complaint, that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: 07/02/2013

Chris Griffin